In re YARN PROCESSING PATENT VALIDITY LITIGATION.

MDL No. 82.

United States District Court,
S. D. Florida.

March 6, 1979.
As Amended April 20, 1979.

James L. Armstrong, III and Hugh J. Turner, Jr., Smathers & Thompson, Miami, Fla., for Lex Tex, Ltd., Inc.

William K. West, Jr., Cushman, Darby & Cushman, Washington, D.C., for Burlington Industries.

Dale H. Hoscheit, Schuyler, Birch, Swindler, McKie & Beckett, Washington, D.C., for Monsanto of North Carolina, Inc.

Wallace D. Newcomb, Philadelphia, Pa., for Collins & Aikman.

David Rabin, Greensboro, N.C., for Dow-Badische Co., National Spinning Co., Collins & Aikman and Glen Raven Mills, Inc.

David Klingsberg and David F. Ryan, Kaye, Scholer, Fierman, Hays & Handler, New York City, for National Spinning Co., Dow-Badische Co. and Hoechst Fiber Industries.

Daniel A. Kavanaugh, Miami, Fla., for ARCT and Barmag.

## MEMORANDUM OPINION AND ORDER DENYING LEX TEX'S DEMAND FOR A JURY TRIAL

ATKINS, Chief Judge.

These cases were joined with several others that were transferred pursuant to 28 U.S.C. § 1407.[1] The current infringement actions were brought by Lex Tex following a ruling by the Fifth Circuit Court of Appeals that Lex Tex's patents have been misused and are thus unenforceable; *In re Yarn Processing Patent Validity Litigation*, 398 F.Supp. 31 (S.D.Fla.1975), aff'd 541 F.2d 1127 (5th Cir. 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977). The complaints filed by Lex Tex against the Throwsters seek damages for "periods of time with respect to which the plaintiff's claim is not subject to defenses arising out of patent misuse." Lex Tex argues that it has purged the previously adjudicated misuse of its patents.

On October 4, 1978, the Court, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, ordered a separate trial on the issue of purge, since "it would be conducive to expedition and economy and in furtherance of convenience." Several Throwsters then filed declaratory judgment actions against Lex Tex alleging the misuse has not been purged. These actions were consolidated with the transferred cases. The issue presently before this Court is whether Lex Tex's claim that it has purged the misuse of its patents 3,077,724, 3,091,912 and 3,472,011 is triable by right to a jury. In the present actions, Lex Tex has demanded trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure. The Throwsters have moved to strike the jury trial demand.

### I.

It has long been the view of all courts that a viable defense in a patent infringement action is that of patent misuse. Patent misuse is an extension of the equitable doctrine of "unclean hands." *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465, 77 S.Ct. 490, 1 L.Ed.2d 465 (1957); *W. L. Gore & Associates, Inc. v. Carlisle*, 529 F.2d 614, 622 (3rd Cir. 1976); *Ansul Co. v. Uniroyal, Inc.*, 306 F.Supp. 541, 563 (S.D.N.Y.), *mod. & aff'd*, 448 F.2d 872 (2d Cir.); *cert. denied*, 404 U.S. 1018, 92 S.Ct. 680, 30 L.Ed.2d 666 (1971); *Inland Products Co. v. MPH Manufacturing Corp.*, 25 F.R.D. 238, 247 (N.D.Ill.1959). The equitable defense of "unclean hands" applies:

> "whenever a party, who as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, good faith, or other equitable principal, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." 2 Pomeroy's Equity Jurisprudence § 398 (1941).

The traditional concept of equity jurisdiction required a showing of wrongful intent or willful misconduct to establish "unclean hands." *Ansul Co. v. Uniroyal, Inc.*, 306 F.Supp. 541, 563 (S.D.N.Y.1969), *aff'd & mod.*, 448 F.2d 872 (2d Cir.), *cert. denied*, 404 U.S. 1018, 92 S.Ct. 680, 30 L.Ed.2d 666 (1971). In the patent field, the doctrine has been used in a variety of situations ranging from cases that involved licensing agreements that amounted to tying arrangements, to price fixing or other restrictions on resale:

> ". . . in whatever posture the issue may be tendered courts of equity will

---

1. For a more complete procedural history, *See In re Yarn Processing Patent Validity Litigation*, 541 F.2d 1127 (5th Cir. 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974), and *In re Yarn Processing Patent Validity Litigation*, 341 F.Supp. 376 (Jud.Pan.Mult. Lit.1972).

withhold relief where the patentee and those claiming under him are using the patent privilege contrary to the public interest." *Mercoid Corp. v. Mid-Continent Inv. Co.,* 320 U.S. 661, 669, 64 S.Ct. 268, 273, 88 L.Ed. 376 (1944), *citing Morton Salt v. G. S. Suppiger Co.,* 314 U.S. 488, 492, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

■ Since the defense of misuse is equitable in nature, and based on a strong public policy against allowing one who wrongfully uses a patent to enforce it during the misuse, the remedy of purge has developed, requiring that there be a showing that a dissipation or purge of the effects of the misuse has occurred, before the patentee may enforce his patent. *United States Gypsum Co. v. National Gypsum Co.,* 352 U.S. 457, 465, 77 S.Ct. 490, 1 L.Ed.2d 465 (1957). The burden is on the patentee to show the misuse has ceased and its effect dissipated. *B. B. Chemical Co. v. Ellis,* 314 U.S. 495, 498, 62 S.Ct. 406, 86 L.Ed. 367 (1942); *Preformed Line Products Co. v. Fanner Mfg. Co.,* 328 F.2d 265, 279 (6th Cir.), *cert. denied,* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964); *Ansul Co. v. Uniroyal, Inc.,* 306 F.Supp. 541, 560 (S.D.N.Y.1969), *mod. & aff'd* 448 F.2d 872 (2d Cir.), *cert. denied,* 404 U.S. 1018, 92 S.Ct. 680, 30 L.Ed.2d 666 (1971).

In *Morton Salt v. G. S. Suppiger Co.,* 314 U.S. 488, 493, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942), the Supreme Court hinted that like misuse, purge is solely equitable in nature. The High Court stated that an equity court should continue to withhold assistance in a patent misuse case "at least until it is made to appear that the improper practice has been abandoned and the consequences of the misuse of the patent have been dissipated." In a companion case decided the same day, *B. B. Chemical Co. v. Ellis,* 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367 (1942), the Court further inferred that the purge issue was an equitable remedy. After denying petitioner's claim for relief on grounds of misuse, the Court stated:

"It will be appropriate to consider petitioner's right to relief when it is able to show that it has fully abandoned its present method of restraining competition in the sale of unpatented articles and that the consequences of the practice have been fully dissipated." *Id.* at 498, 62 S.Ct. at 408.

In *Preformed Line Products Co. v. Fanner Mfg. Co.,* 328 F.2d 265, 279 (6th Cir.), *cert. denied,* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964), the Sixth Circuit clearly identified purge as an equitable remedy:

" 'In an equity suit, the end to be served is not the punishment of past transgression, nor is it merely to end specific illegal practices. . . .' *International Salt Co., Inc. v. United States,* 332 U.S. 392, 401, 68 S.Ct. 12, 17, 92 L.Ed. 20."

The court in *Preformed Line* also stated that the determination of whether purge was effected is largely within the discretion of the trial court. *Id.*

More recently, in *Jack Winter, Inc. v. Koratron Co., Inc.,* 375 F.Supp. 1, 71 (N.D. Calif.1976), the court stated:

"A court of equity can thus deny the enforcement of the patent which has been misused until the abusive practices are terminated and the effects of those practices dissipated. . . . The question of whether a purge has been accomplished is a factual matter and is 'largely discretionary with the trial court.' "

■ Most other courts have been unwilling to distinguish between purge and misuse for these purposes. *See Eastern Venetian Blind Co. v. Acme Steel Co.,* 188 F.2d 247, 254 (4th Cir.), *cert. denied,* 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623 (1951); *Gray Tool Co. v. Humble Oil & Refining Co.,* 186 F.2d 365, 369–70 (5th Cir.), *cert. denied,* 341 U.S. 934, 71 S.Ct. 854, 95 L.Ed. 1363 (1951); *Campbell v. Mueller,* 159 F.2d 803, 806–7 (6th Cir. 1947); *Sylvania Industrial Corporation v. Visking Corporation,* 132 F.2d 947, 958 (4th Cir.), *cert. dismissed,* 319 U.S. 777, 63 S.Ct. 1033, 87 L.Ed. 1723 (1943); *Novadel-Agene Corporation v. Penn,* 119 F.2d 764, 766–67 (5th Cir. 1941), *cert. denied,* 314 U.S. 645, 62 S.Ct. 85, 86 L.Ed. 517 (1942). Thus, it has become generally recognized that like the misuse defense, the purge remedy is equitable in nature.

Our inquiry does not end here. Lex Tex argues that assuming purge is an equitable remedy, the right to trial by jury still remains under *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and its progeny.

## II.

Lex Tex's contention simply stated, is that there are legal and equitable issues that could be determined by resolution of common factual issues, and therefore this Court should exercise its discretion so that trial by jury should not be precluded. *Beacon Theatres, supra.*

The Fifth Circuit Court of Appeals affirmed this Court's finding of patent misuse due to price fixing in violation of the antitrust laws. The Court of Appeals stated that one probable effect of the misuse was "that the non-patentee machinery manufacturers are left with less incentive to patronize alternative technology." 541 F.2d at 1142. Lex Tex argues (1) that to establish purge it is necessary to resolve what is "alternative technology," and that this is an issue which required addressing the question of what is infringed, and thereby triable as of right to a jury; and (2) that Lex Tex has been sued for alleged antitrust violations,[2] and therefore has a right to jury trial under the long-standing rule requiring jury trial in antitrust cases.

The Supreme Court decision in *Beacon Theatres*, as well as a number of cases in the Fifth Circuit, have affirmed "in the strongest of terms a strict observance of the right to trial by jury." *Eli Lilly Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1107 (5th Cir. 1972); *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964); *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486 (5th Cir. 1961).

As the Fifth Circuit stated in *Eli Lilly* :

". . . where certain fact issues are common to both legal and equitable claims in a lawsuit, only under the *most imperative circumstances* should a judge proceed first with the equitable claims in such a fashion that he, rather than the jury the parties have demanded, decide those fact issues." 460 F.2d at 1107.

Lex Tex's attempt to rely on *Beacon Theatres* and the cases cited from the Fifth Circuit is misplaced. There has been sufficient evidence presented to this Court to establish that it is not necessary to determine the allegedly infringed technology to find what constitutes "alternative technology." Without this necessary commonality, this Court cannot require a trial by jury on this wholly equitable issue. Although admittedly there may be some initial inquiry into the contents of Lex Tex's patents, the determination of what is "alternative technology" is simply a threshold question. The real issues that must be determined in the purge trial are whether this technology is competitive, interchangeable and equivalent, as well as questions that relate to the dissipation of the misuse found by the Court of Appeals. The fact that aspects of the same patent may be in issue in both the purge and infringement trials is not sufficient to make an equitable issue triable by right to a jury. If I were to accept Lex Tex's argument that if there are *any* facts in common between an equitable and legal claim that the legal claim must be tried first, thus, making the equitable claim in those instances triable by a jury, there would be in effect no such thing as an equitable action.

Lex Tex's approach is not consistent with the Supreme Court's recent decision in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), wherein the Court stated that "[b]oth the premise of *Beacon Theatres*, and the fact that it enunciated no more than a general prudential rule were confirmed by

---

**2.** Collins & Aikman has filed a declaratory action in the Southern District of Florida on the misuse and in addition seeking treble damages from Lex Tex for antitrust violations of price-fixing. This is the only complaint to so allege.

*Collins & Aikman v. Lex Tex*, 76–6514–Civ–CA. Other of the Throwsters have counterclaimed in infringement actions scheduled for trial elsewhere.

this Court's decision in *Katchen v. Landy*, 382 U.S. 323, [86 S.Ct. 467, 15 L.Ed.2d 391]." Then quoting from that decision the Court continued:

> " 'Both *Beacon Theatres* and *Dairy Queen* [369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44] recognized there might be situations in which the Court would proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim. 382 U.S. at 339 [86 S.Ct., at 478.]' "

In this case we have no such problems. As discussed above, the overlap cited by Lex Tex is a relatively superficial one. Without a more substantial commonality, I feel bound to deny Lex Tex demand. As the Fifth Circuit stated in *Hensley Equipment Co. v. Esco Corporation*:

> "Misuse of a patent in no way affects the validity of the patent itself, and once the patentee had "purged himself" he may again enforce his patent by infringement suits." 383 F.2d 252, 261 (5th Cir. 1967).

The quotation recited above points out the separate nature of the purge and infringement actions in general. This separate nature mandates trial by jury in the case of infringement, and trial before a court sitting in equity in the case of purge.

This Court also finds the present action is a case where it is "prudential" to try the equitable purge issue before the infringement and validity actions. The purge issue was originally severed by order of this Court for this very reason. This Court remains convinced that by trying a wholly equitable issue first without a jury, it is taking a position that is both consistent with the plaintiff's Seventh Amendment rights, and the cases interpreting that Amendment as exemplified by *Beacon Theatres v. Westover.*

Lex Tex's further assertion that purge of its misuse is an affirmative antitrust claim must also be rejected. This Court in an earlier decision has already held that purge and misuse are separate doctrines.[3] Therefore, although there is some authority that successful assertion of the defense of misuse makes out an affirmative case under the antitrust laws,[4] there is no authority for the proposition that proof of purge in and of itself is an antitrust claim.[5] *Cf. Koratron Co., Inc. v. Lion Uniform Co.*, 409 F.Supp. 1019, 1028 (N.D.Cal.1976).

As this Court has previously stated, while a patentee may abandon the illegal practices, purge is not effected unless the effects of the earlier misuse are fully dissipated.[6] *Morton Salt v. G. S. Suppiger, supra, B. B. Chemical v. Ellis, supra.* Thus the failure to establish purge is not tantamount to misuse, and the continuation of the prior misuse cannot be presumed.

The Throwsters' motion to strike is therefore GRANTED.

---

**3.** This Court's order on Summary Judgment of August 23, 1978, at pp. 4–5.

**4.** *See Hensley Equipment Co. v. Esco Corporation*, 383 F.2d 252, 261–62 (5th Cir. 1967), n. 19, where this issue is discussed.

**5.** Lex Tex argues in its reply brief that if it should be found that it has not purged the misuse at trial, this is a clear implication that

"price fixing" has continued until the date of the ruling. Lex Tex cites no authority for this proposition. Nor is this Court persuaded, that a finding that there has been no purge of the misuse is tantamount to establishing a price fixing violation under the antitrust laws.

**6.** Order on Summary Judgment of August 23, 1978, at pp. 8–10.